UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CATLIN SPECIALTY INSURANCE )
COMPANY, )
 )
      Plaintiff, )
 )
    v. )
 )
PARKS INDUSTRIES, LLC; )
TM TRANSPORTATION INC.; )
and LT CARGO, INC., )
 )
      Defendants. )   Case No. 14-cv-727
 )
 )   Judge John W. Darrah
PARKS INUDSTRIES, LLC, )
 )
    Defendant/Counter-Plaintiff, )
 )
    v. )
 )
CATLIN SPECIALTY INSURANCE )
COMPANY, )
 )
    Plaintiff/Counter-Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Catlin Specialty Insurance Company ("Plaintiff" or "Catlin") filed a Complaint for Declaratory Judgment against Parks Industries, LLC ("Parks"); TM Transportation, Inc. ("TM"); and LT Cargo, Inc. ("LT"). Parks filed a Counterclaim, seeking defense and indemnity. TM and LT are underlying Plaintiffs in an action in the Circuit Court of Cook County against Parks and others. With respect to Parks, the underlying action alleges breach of contract, breach of an express warranty, breach of an implied warranty of merchantability, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, and negligent misrepresentation. Catlin seeks a declaratory judgment that the underlying lawsuit does not come within the

coverage of two insurance policies issued to Parks. Parks filed a Motion for Summary Judgment. For the reasons set forth below, the Motion is denied.

## LOCAL RULE 56.1

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). Pursuant to Local Rule 56.1(b)(3)(C), the nonmovant may submit additional statements of material facts that "require the denial of summary judgment. Local Rule 56.1(b)(3)(C) further permits the nonmovant to submit a statement "of any additional facts that require the denial of summary judgment . . . ." To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact is admitted. *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005). Similarly, to the extent that a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact that relies upon inadmissible hearsay, such a fact is disregarded. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).

## BACKGROUND

The following facts are taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1.

Parks is an Illinois limited liability company located in Marion, Illinois. (Dkt. 51, ¶ 2.) Parks is the developer and manufacturer of an auxiliary power unit known as the HP2000 Auxiliary Power Unit ("APU"), which is designed to be installed on a semi-trailer truck to run

2

climate controls and other functions while the engine is shut down. (*Id.* at ¶ 12.) The underlying Complaint alleges that Parks sold defective APUs to LT from January 2012 to September 2012. (*Id.* at ¶ 13.) Specifically, the underlying Complaint alleges that, from February 2012 until April 2013, every APU installed on each of LT's trucks stopped functioning properly at least once. (Dkt. 59, ¶ 6.) LT alleges that they have spent $23,739.28 to repair the defective units and that each truck had to sit idle for at least one day while being repaired, causing significant lost profits. (*Id.*) In the underlying suit, LT and TM seek recovery in an amount in excess of $75,000 for the purchase price of the APUs, installation and uninstallation costs, repair costs, total gross income lost for the use of the semi-trucks, layover payments made to drivers, lodging charges, loss of skilled drivers and fuel charges. (Dkt. 1, ¶¶ 10, 23.)

Catlin is a Delaware corporation, with its principal place of business in Dover, Delaware. (Dkt. 51, ¶ 3.) Catlin issued two commercial general liability policies to Parks, covering two periods: Policy No. 2400500165 for the period February 15, 2012, through February 15, 2013; and Policy No. 2400500294 for the period February 15, 2013, through February 15, 2014. (*Id.* at ¶ 21.) The two policies are subject to the same terms and exclusions. (*Id.* at ¶ 22.) Under those policies, Catlin provides coverage for "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" caused by an "occurrence" that took place during the policy period. (*Id.* at ¶ 26.) Catlin, as more fully discussed below, asserts that two policy exclusions apply: Exclusion (k) "Damage To Your Product"; and Exclusion (m) "Damage To Impaired Property Or Property Not Physically Injured." (*Id.* at ¶ 29.)

## LEGAL STANDARD

In Illinois, "the interpretation of an insurance policy is a question of law that is properly decided by way of summary judgment." *JAR Labs. LLC v. Great Am. E & S Ins. Co.*, 945 F.

Supp. 2d 937, 942 (N.D. Ill. 2013) (citing *BASF AG v. Great American Assur. Co.,* 552 F.3d 813, 818-19 (7th Cir. 2008)). A court determines whether an insurer has a duty to defend by examining the underlying Complaint and the language of the insurance policy. *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.,* 828 N.E.2d 1092, 1098 (Ill. 2005). "An insurer's duty to defend its insured is broader than its duty to indemnify." *Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010). "If the underlying complaint alleges facts within or potentially within the policy's coverage, the insurer's duty to defend arises even if the allegations are groundless, false or fraudulent." *United Nat. Ins. Co. v. 200 N. Dearborn P'ship*, 2012 IL App (1st) 100569, ¶ 17, 979 N.E.2d 920, 925 (Ill. App. Ct. 2012). If an insurer has no duty to defend, it has no duty to indemnify. *McFatridge*, 604 F.3d at 338. However, "once the duty to defend is found to exist with respect to one or some of the theories of recovery advanced in the underlying litigation, the insurer must defend the insured with regard to the remaining theories of recovery as well." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Glenview Park Dist.*, 632 N.E.2d 1039, 1042-43 (Ill. 1994). The "burden of proving that a claim falls within an exclusion" to an insurance policy falls on the insurer. *Hurst-Rosche Eng'rs. Inc. v. Commercial Union Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir. 1995).

## ANALYSIS

Catlin provides coverage for "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" caused by an "occurrence" that took place during the policy period. (Dkt. 51, ¶ 26.) "Property damage" is defined as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

4

> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(*Id.* at ¶ 27.) "Occurrence" is defined as "an accident, including continuous or repeated exposure to the same general harmful conditions." (*Id.* at ¶ 28.)

Parks argues that property damage occurred when LT Cargo lost the use of their trucks for repair and replacement of the defective APUs. However, "an allegation of defective or faulty workmanship in the insured's own products does not, by itself, allege 'property damage' under a standard CGL policy." *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 811 (7th Cir. 2010). These types of policies "are intended to protect the insured from liability for injury or damage to the persons or property of others; they are not intended to pay the costs associated with repairing or replacing the insured's defective work and products, which are purely economic losses." *Id.* (citing *West Bend Mutual Ins. Co. v. People of Illinois*, 929 N.E.2d 606, 614-15 (2010)). Catlin cites to *Diamond State Ins. Co. v. Chester-Jensen Co., Inc.*, 611 N.E.2d 1083 (Ill. App. Ct. 1993), and argues that there was no property damage alleged in the underlying suit, only pure economic loss. In *Diamond State*, the court held that "[m]ere allegations of repair and modification without any allegations of physical injury are insufficient to involve coverage" when policies require a physical injury to tangible property. *Diamond State*, 611 N.E.2d at 1089.

The underlying Complaint specifically alleges that trucks requiring APU repairs sat idle for at least one day, causing profit loss. However, this is not "[l]oss of use of tangible property that is not physically injured." The temporary loss of trucks was economic damage, not permanent deprivation of use of tangible property. In contrast, loss of use coverage applies when there is permanent deprivation of use to a third-party's tangible property due to the insured's product. *See, e.g., Travelers Ins. Companies v. Penda Corp.*, 974 F.2d 823, 832-33

5

(7th Cir. 1992) (holding that insurer had duty to defend because company had to destroy the other materials when insureds paper became unusable). The cost of the idle trucks is "associated with repairing or replacing the insured's defective work and products, which are purely economic losses." *Amerisure Mut. Ins. Co.*, 622 F.3d at 811. Under Illinois law, pure economic loss is not covered under standard GCL policies. *See Diamond State*, 611 N.E.2d at 1088-89.

Catlin also argues that there was no occurrence. "Occurrence" is defined as "an accident, including continuous or repeated exposure to the same general harmful conditions." (*Id.* at ¶ 28.) Under Illinois law, "an accident" is defined as "an unforeseen occurrence, usually of an untoward or disastrous character, or an undersigned, sudden or unexpected event of an inflictive or unfortunate character." *Massachusetts Bay Ins. Co. v. Vic Koening Leasing Co.*, 136 F.3d 1116, 1124 (7th Cir.1998) (citation omitted). The underlying complaint alleges that the APUs failed because they were defective. "The mere failure of a product to perform as warranted is not beyond the realm of expectation and is foreseeable by the parties." *Diamond State*, 611 N.E.2d at 1092. As the alleged failure of the defective APUs was foreseeable, it was not an occurrence. The APU failures were not an occurrence and not covered under the policies.

As the underlying claim does not trigger coverage by Catlin, there is no duty to defend or indemnify. *McFatridge*, 604 F.3d at 338 ("If an insurer has no duty to defend, it has no duty to indemnify.") It is also unnecessary to determine if the claims fall under the policy exclusions.

## CONCLUSION

The policies do not cover economic damages; and there was no occurrence, as the failure of a defective product is foreseeable and not an accident. For the reasons set forth above, Defendant's Motion for Summary Judgment [34] is denied.

Date:  January 21, 2015

_JOHN W. DARRAH_
United States District Court Judge